PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-2070

_____

D.C. Docket No. 94-218-CIV-T-17C

JERRY E. TIDWELL,

Plaintiff-Appellee-
Cross-Appellant,

versus

CARTER PRODUCTS,

Defendant-Appellant-
Cross-Appellee,

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(February 26, 1998)**

Before ANDERSON and CARNES, Circuit Judges, and O'KELLEY,[*] Senior
District Judge.

O'KELLEY, Senior District Judge:

Carter Products appeals from a judgment entered against it
pursuant to a jury verdict in favor of Jerry Tidwell in this age
discrimination case under the Age Discrimination and Employment
Act, 29 U.S.C. § 621, et seq. (the ADEA). Carter challenges the
district court's denial of its motion for judgment as a matter

_____

[*]Honorable William C. O'Kelley, Senior U.S. District
Judge for the Northern District of Georgia, sitting by
designation.

1

of law on Tidwell's claim that his termination by Carter constituted age discrimination as well as the district court's award of equitable relief in the form of front pay to Tidwell. In his cross-appeal, Tidwell challenges the court's grant of judgment as a matter of law to Carter on the issue of willfulness. The dispositive issue in this appeal is whether Tidwell produced adequate evidence to allow a reasonable factfinder to disbelieve Carter's proffered nondiscriminatory reason for terminating Tidwell. We conclude that he did not and that Carter was entitled to judgment as a matter of law for that reason.

### Facts

Carter Products manufactures and sells health and beauty care products. Tidwell began his employment with Carter as a district sales manager in 1972. He later served as Territory Representative for Carter's central Florida region, working out of Tampa, until his April 23, 1993 termination at the age of fifty.

Tidwell alleges that he was terminated because of his age. Carter contends that Tidwell's position was eliminated as part of a nationwide reduction-in-force (RIF). Carter eliminated twelve positions, from an original force of 58. While four of the original 48 sales employees over 40 were discharged, 19 were retained.

During its reorganization, key accounts, including many of Tidwell's, were transferred to regional and divisional managers.

Carter also developed a new sales philosophy, beginning to outsource to independent contractors. The number of sales territories were reduced in order to reduce costs, and it was determined that Florida could be served by a single territory manager. At that time there were two territory managers – Tidwell in Tampa (age 50) and James Booth in Miami (age 26). Carter determined that it would be best served by a Miami territory, contending that Miami had more direct accounts and more independent stores requiring individual attention. Carter contends that Tidwell's performance had nothing to do with this decision. The Tampa territory manager position was therefore eliminated, its accounts to be absorbed by other workers. Similar decisions were made throughout the country, with no apparent pattern of retention according to age (several older employees were retained while their younger counterparts were eliminated). Carter explained its methodology used in the selection process: If there was only one sales representative in the area to be eliminated, that person would be released; if there were more than one representative, their relative performances would be compared. Carter characterized Tidwell's situation as falling into the first category.

## Procedural History

The EEOC issued a "no reasonable cause" determination to Tidwell's charge of discrimination. The EEOC found no cause to believe Carter had violated any statutes in terminating Tidwell. "The evidence obtained did not support [Tidwell's] allegation of

unlawful employment discrimination." DX 20. The EEOC explained in a memorandum that plaintiff's low rating in his 1992 evaluation "signifies that [Tidwell] was performing below the reasonable expectations of [Carter]." It reasoned that plaintiff's performance "was a factor along with [Carter's] other reasons to terminate [Tidwell's] employment." DX 20.

Tidwell then filed an action in the District Court for the Middle District of Florida, claiming he was discharged because of his age in violation of the ADEA. Before the jury, Tidwell attempted to prove his claim under a disparate treatment theory, which requires proof of intentional age discrimination. Tidwell offered several indications of age discrimination: (1) his 1992 performance evaluation; (2) Carter's retention of Booth and the Miami territory; (3) inconsistent reasons given for his termination.

The trial court denied Carter's motions for judgment as a matter of law at the close of Tidwell's case. Carter then offered its nondiscriminatory reason, the RIF, for Tidwell's termination. The court denied Carter's motion for judgment as a matter of law at the close of all the evidence. The jury returned a verdict for Tidwell and awarded $60,000 in lost wages and benefits. The amount was doubled as liquidated damages because the jury found the discrimination to be a willful violation of the ADEA. The court reserved entering judgment until it concluded a supplemental hearing regarding valuation and certain evidence of Tidwell's side business which he had

4

concealed during discovery. The court found that Tidwell had indeed lied about his side business but rejected Carter's unclean hands defense to preclude a front pay award. Instead, the court ordered a set-off against the front pay award in the amount of Carter's expenses associated with the additional discovery caused by Tidwell's false testimony. The court awarded front pay for the period from the jury verdict until Tidwell's 62nd birthday – more than eight years. Upon Carter's motions, the Court permitted the jury's verdict on liability to stand and refused to reconsider its ruling on front pay. The Court did, however, overturn the jury finding as to willfulness.

## Standard of Review

A district court's denial of a defendant's motion for judgment as a matter of law is reviewed de novo, entailing the application of the same standards used by the district court. Dade County v. Alvarez, 124 F.3d 1380, 1383 (11th Cir. 1997). Those standards require the consideration of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). All evidence and inferences are considered in a light most favorable to the nonmoving party. Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).

> If the facts and inferences point overwhemingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the

5

motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.

Id. (footnotes omitted). The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; "there must be a substantial conflict in evidence to support a jury question." Id. Accordingly, we must determine whether reasonable jurors could have concluded as this jury did based on the presented evidence. Quick v. Peoples Bank, 993 F.2d 793, 797 (11th Cir. 1993).

**Discussion**

Carter contends that it is entitled to judgment as a matter of law because (1) Tidwell presented no evidence, statistical or otherwise, of age bias or discrimination and (2) Tidwell failed to demonstrate that Carter's articulated reason for its decision to include him in the RIF was pretextual. Tidwell disagrees, arguing that judgment as a matter of law is inappropriate because he introduced sufficient evidence to permit the jury to disbelieve Carter's proffered explanation for his dismissal.

To create a jury question in a discrimination case based on circumstantial evidence, a plaintiff must establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A prima facie case effectively creates a presumption of unlawful discrimination by the employer: "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff

6

because no issue of fact remains in the case." <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981)(footnote omitted). Tidwell established a prima facie case by proving that he was 50 years old, had worked for Carter for 21 years, was terminated, and that his accounts were assumed by a 26 year old with only one year of experience with the company.[1]

The establishment of a prima facie case shifts the burden to the employer to produce legitimate, nondiscriminatory reasons for the allegedly discriminatory employment action. <u>Id.</u> at 254. To satisfy this burden, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Id.</u> at 257. If the employer successfully produces a nondiscriminatory reason for its action, the presumption of discrimination disappears. <u>Id.</u> at 255. The plaintiff then has the opportunity to show the employer's proffered reason to be pretextual. <u>Id.</u> at 256.

Once an employer offers a legitimate, nondiscriminatory reason for its action, a plaintiff must show that "there is sufficient evidence to demonstrate the existence of a genuine

---

[1] Our task is not to revisit whether the plaintiff below successfully established a prima facie case of discrimination. "When the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection the factfinder must then decide whether the rejection was discriminatory" and the question of whether the plaintiff properly made out a prima facie case is no longer relevant. *See* <u>U.S. Postal Serv. v. Aikens</u>, 460 U.S. 711, 714-15 (1983) and <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).

issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions" in order to survive judgment as a matter of law.  Combs v. Plantation Patterns, 106 F.3d 1519, 1529 (11th Cir. 1997).  If a plaintiff provides a prima facie case plus evidence discrediting the employer's proffered reasons, the plaintiff is entitled to have the factfinder decide the ultimate issue of discrimination.  Id. at 1531.

The task of this court is to consider the entire record in the light most favorable to Tidwell to determine whether there was sufficient evidence for Tidwell to withstand Carter's motions for judgment as a matter of law.  In order to affirm the district court's denial of judgment to Carter as a matter of law, we must find that Tidwell has cast sufficient doubt on Carter's proffered legitimate, nondiscriminatory reasons to permit a reasonable factfinder to conclude that Carter's proffered reasons "were not what actually motivated its conduct," Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994).

Carter proffered its RIF as a legitimate, nondiscriminatory reason for terminating Tidwell, eliminating the presumption of discrimination that attached to Tidwell's prima facie case.  The court will consider the record evidence to determine whether it would permit a reasonable factfinder to reject Carter's explanation, allowing the case to be submitted to the jury.

8

I. 1992 Performance Evaluation

Tidwell's evaluations show that he met Carter's expectations in 1990 and 1991. During his 1992 evaluation, his supervisor, Sindee Furshman, ranked him below expectations. Tidwell complained that the evaluation was unfair. He testified that he asked Furshman several times whether he could get a good evaluation. The first two times she responded that she did not know. "The third time I asked her, I said, 'Sindee, if I do my job completely perfect, can I get a good evaluation?' And she went like that to me (shaking head) and that was it." Rec. 3-130.

Carter contends that Furshman's response was a stray remark. This incident occurred several months before his termination, an event with which Furshman had no involvement. [2] Additionally, Furshman's response in no way suggested that Tidwell's age was the reason for his termination. This instance does not provide the needed "more than a mere scintilla of evidence" to survive a motion for judgment as a matter of law. It does not present a substantial conflict in evidence as to Carter's purported reason for terminating Tidwell, the RIF, as to support a jury question.

II. Retention of Booth and the Miami Territory

Carter presented evidence at trial to demonstrate that the RIF was age neutral, belying any intent to discriminate. Among other things, Carter's expert showed that the average age of the

_____

[2]Furshman was also eliminated as part of Carter's RIF.

sales force actually increased slightly after the RIF.  Carter argues that its elimination of Tidwell's territory was not a pretext for age discrimination, as is clear because the territory was eliminated and has not been replaced.  Tidwell improperly questions Carter's methodology and process in the RIF.  Tidwell also focuses on the difference in age between himself and Booth and questions the wisdom of the choice to retain Booth.  However, while Booth absorbed some of Tidwell's accounts, he was not hired to replace Tidwell.  Tidwell also points out that he was never offered a transfer to Miami.  This contention is superfluous, since no other workers were offered transfers and Tidwell himself never suggested the idea.  *See* Zaben v. Air Products & Chem., Inc., 129 F.3d 1453, 1459 (11th Cir. 1997) (employee's contention that he should have been allowed to transfer did not present sufficient evidence of pretext to create a jury question when no other workers were permitted to transfer either).  All of these contentions by Tidwell are disagreements about the wisdom of Carter's decision to retain Booth and the Miami territory, rather than disbelief in the RIF and its application to Tidwell.  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer."  Combs, 106 F.3d at 1543.

III. "Inconsistent" Remarks

10

Tidwell maintains that certain alleged inconsistencies as to the reason given for Tidwell's termination allow an inference of pretext. Carter maintains that the reason for its decision was based on its reorganization and an evaluation of its territorial needs. Tidwell points to several instances to show Carter's inconsistency.

A few days before his termination, Tidwell was asked to meet with a supervisor in Atlanta, Tim Cleary, and the head of Carter's personnel department, Denise Duca. At this time Tidwell was told that he had done a great job but that his position was being terminated due to the realignment of territory. When Tidwell asked Cleary who was going to take over the Tampa market, Cleary responded that he did not know.

Kenneth Geissler, Carter's vice-president of field sales, wrote a memo regarding the positions which he anticipated would be affected by the territory realignments. The memo notes two criteria: (1) whether they are in a market with other Carter personnel and, (2) if so, how they were selected to be terminated verses others in their marketplace. As to Tidwell, the memo notes: "Tampa. Total volume $900,000. Only 7% of volume done in food. Five accounts make up 80% of business. *Performance issue*. Accounts would be covered by telemarketing or by J. Booth, Angel Martinez." DX 7.

Tidwell placed great importance on the EEOC "no cause" determination which noted that performance was a factor along with Carter's other reasons for terminating Tidwell. Carter

11

argues that the EEOC "no cause" determination did not reflect any inconsistent statements made by Carter but simply reflected a conclusion made by the EEOC after reviewing Tidwell's performance evaluations.

Although the identification of inconsistencies in an employer's testimony can be evidence of pretext, *see* <u>Bechtel Construction Co. v. Secr. of Labor</u>, 50 F.3d 926 (11th Cir. 1995), and <u>Howard v. BP Oil Co., Inc.</u>, 32 F.3d 520, 525 (11th Cir. 1994), the examples in this case do not present such a situation. At most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for Tidwell's termination does not, however, prove pretext. *See* <u>Zaben</u>, 129 F.3d at 1458-59 ("Although the company gave differing explanations for the selection of employees to be discharged, saying on the one hand that seniority played no role in the process and that only an employee's performance was considered while, on the other hand, asserting that [the employee] was discharged because he had the least seniority, its reasons are not ... necessarily inconsistent.").

**Conclusion**

Tidwell failed to produce evidence adequate to permit a reasonable factfinder to disbelieve Carter's proffered nondiscriminatory explanation that it terminated Tidwell as a part of its reduction-in-force. Therefore, Carter was entitled

12

to judgment as a matter of law, and the district court should not  have permitted the case to go to the jury.

Accordingly, we REVERSE the entry of judgment in favor of Tidwell, and we REMAND the case for entry of judgment in favor of Carter.