**Richard FUSARO, et al., Plaintiffs,**

v.

**HIALEAH HOUSING AUTHORITY, Defendant.**

No. 97–2732–CIV.

United States District Court, S.D. Florida, Miami Division.

Jan. 11, 1999.

J.B. Harris, Coral Gables, FL, Nicholas A. Manzini, Manzini & Associates, P.A., Miami, FL, for plaintiffs.

Edward G. Guedes, Weiss Serota Helfman Pastoriza & Guedes, P.A., Miami, FL, for defendant.

## ORDER

K.MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant Hialeah Housing Authority's Motion for Summary Judgment (DE # 106) and Supplemental Motion for Summary Judgment (DE # 129).

UPON CONSIDERATION of the motions, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiffs Richard Fusaro, Hugo Hernandez and Roberto Jimenez ("Plaintiffs") filed a 24–count complaint against the Hialeah Housing Authority (the "Authority") and Executive Director Maria Roca ("Roca") alleging violations of Title VII, the Age Discrimination in Employment Act ("ADEA"), procedural and substantive due process (pursuant to 42 U.S.C. § 1983) and the Florida Civil Rights Act.[1]

## STATEMENT OF FACTS[2]

The following facts are undisputed for purposes of ruling on the instant motion: Fusaro began working with the Authority in January 1980. In March 1994, Fusaro initiated contact with federal agents who were investigating allegations of mismanagement and misappropriation by the Authority's then-executive director Rafael Sanchez. In November 1995, Sanchez was suspended from his position and the Authority's Board of Commissioners (the "Board") voted Fusaro as acting executive director of the Authority. In December 1995, Roca resigned her position on the Authority's Board and was appointed to replace Fusaro as acting executive director. At that time, Fusaro was reassigned to his former position as Director of Operations. Fusaro alleges that after Roca became acting executive director, he was continually subject to reprimands (verbal and written) for alleged

disobedience and nonperformance. On November 13, 1996, Fusaro was terminated from his employment with the Authority. Fusaro alleges his demotion and termination were discriminatory and in retaliation for Fusaro's assistance in the Sanchez investigation. In December 1996, Roca became the permanent executive director of the Authority.

Hernandez and Jimenez began working in the Authority's maintenance department in 1982 and 1975, respectively. In January 1996, Hernandez and Jimenez and several other employees signed a letter of protest (the "Letter") addressed to the United States Department of Housing and Urban Development in which they objected to the operation of the Authority and the Authority's alleged poor treatment of Fusaro. On November 26, 1996, following the completion of an inventory and audit of their department, Hernandez and Jimenez each were terminated from their employment with the Authority. Hernandez and Jimenez allege, among other things, they were terminated in retaliation for their protest letter and for voicing other matters of public concern.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material

---

1. By Order dated October 19, 1998, the Court granted the Authority's motion for partial summary judgment as to those counts of Plaintiffs' complaint alleging violations of the Florida Civil Rights Act. By Order dated December 10, 1998, the Court granted Maria Roca's motion for summary judgment based on qualified immunity and dismissed her as a defendant in this action.

2. The facts provided here relate to the instant motion. Additional facts may be found in this Court's Orders dated October 19, 1998 and December 10, 1998.

fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Burden of Proof

The burden of proof in a Title VII or ADEA action is set out in *McDonnell Doug-* *las Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013 (11th Cir. 1994). Initially, the plaintiff must establish a prima facie case of discrimination. Once a plaintiff establishes a prima facie case, a presumption of discrimination arises. *Hicks,* 509 U.S. at 506, 113 S.Ct. 2742. Thereafter, the defendant can rebut any presumption by producing a legitimate, nondiscriminatory reason for its actions. *Id.* This burden is "exceedingly light"; the defendant must merely proffer the legitimate reasons, not prove them. *Meeks,* 15 F.3d at 1019. Once such a reason is proffered, the plaintiff must then demonstrate the reasons were simply a pretext and the defendant had a discriminatory intent. Because the plaintiff bears the burden of establishing pretext, he must present "significantly probative evidence on the issue to avoid summary judgment." *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 444 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). Thus, "a mere scintilla of evidence does not create a jury question." *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)). That a plaintiff calls into question some assertions made by defendant in support of defendant's justification is not enough; a plaintiff must call into question the veracity of defendant's ultimate justification itself. *Id.* Based on the standards set forth above, the Court will address each Plaintiff's allegations in turn.

## A. Fusaro's Claims of Retaliation and Discrimination Based on National Origin and Age (Counts I And II)

In Count I of the second amended complaint, Fusaro alleges he was subjected to unlawful discrimination and retaliation based on his national origin. In Count II, Fusaro alleges he was discriminated against on the basis of his age.

▮ For purposes of this discussion, the Court will assume Fusaro has stated prima

facie cases for national origin[3] and age discrimination[4] and retaliation.[5] The Authority argues, however, it had a legitimate, nondiscriminatory reason for terminating Fusaro- his inadequate performance as Director of Operations. Thus, Fusaro now has the burden of producing evidence to show the Authority's reason for terminating his employment was simply a pretext for intentional discrimination.

■ With respect to Fusaro's claim for age discrimination, Fusaro provides no evidence other than he was replaced by a younger person. This evidence is part of Fusaro's prima facie case and cannot be used to rebut the Authority's legitimate, nondiscriminatory reason for his termination. *See Tidwell v. Carter Products,* 135 F.3d 1422, 1426 (11th Cir.1998) (plaintiff must provide a prima facie case *plus* evidence discrediting the employer's reasons to survive a motion for summary judgment). In his affidavit in support of his argument, Fusaro states "I firmly believe that I have been discriminated against based on my age and national origin, because I was replaced as Acting Executive Director by a younger Hispanic female who was less qualified than I to run the Authority." Fusaro, however, provides no additional supporting factual evidence for this statement. Conclusory statements in an affidavit are not sufficient evidence to prove age discrimination. *See Red Mendoza v. Borden, Inc.,* 158 F.3d 1171, 1174 (11th Cir.1998). In addition, when asked in a deposition whether there were any reasons *other* than retaliation and national origin that caused his termination at the Authority, Fusaro replied "no."

■ The evidence is similarly lacking with respect to Fusaro's claim for discrimination based on national origin. The sole evidence Fusaro presents to support his claim for discrimination based on national origin is the composition and ethnicity of the Board. In the same deposition, the following exchange took place:

Q: Sir, is it simply your opinion that you are out of work because Maria Roca and Hialeah Housing board members retaliated against you?

Fusaro: I believe so.

Q: Is that a yes, sir?

Fusaro: Yes.

Q: What evidence or indication do you have, sir, that you were discriminated against?

Fusaro: Well the fact that all the board members are Hispanic except for one and she just votes along with the pack, and the executive director is Hispanic.

. . .

Q: Do you have any evidence or indication that the support for which you refer the board as having for the executive director [Maria Roca] was based on national origin?

Fusaro: Do I have any evidence? You are talking about other than my opinion?

Q: Yes.

Fusaro: No.

Q: Do you have any evidence other than your own opinion, sir, that you were discriminated against based on national origin?

3. A plaintiff may establish a prima facie case for national origin discrimination by showing (1) he was a member of a protected class, (2) he was qualified for the position held, (3) adverse employment action occurred and (4) he was replaced by a person outside the protected class. *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995).

4. A plaintiff may establish a prima facie case for age discrimination by showing (1) he was a member of a protected group of persons between the ages of forty and seventy, (2) he was subject to adverse employment action, (3) that a substantially younger person filled the position from which he was discharged and (4) that he was qualified for the position. *Turlington v. Atlanta Gas & Light Co.,* 135 F.3d 1428, 1432 (11th Cir.),

cert. denied, —— U.S. ——, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

5. A plaintiff alleging a retaliatory claim under Title VII must show that (1) he engaged in a statutorily protected activity, (2) an adverse employment action occurred and (3) the adverse action was causally related to the plaintiff's protected activities. *Little v.. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997); *Coutu,* 47 F.3d at 1074. The parties dispute whether Fusaro engaged in a statutorily protected activity (i.e. assisting in the FBI investigation) prior to his termination. The Court is assuming for purposes of this discussion that Fusaro has stated a prima facie case of retaliation and thus need not address this disputed issue.

Fusaro: No.

■ Finally, with respect to Fusaro's claim for retaliation, the Court finds Fusaro has not met his burden of producing "significantly probative evidence" that the Authority was acting with discriminatory intent. There is ample evidence in the record concerning incidents of Fusaro's substandard performance. In fact, Fusaro admits to committing a series of mistakes with respect to a bidding process he oversaw.[6] Finally, as with his claims for discrimination, Fusaro has testified that in his *opinion*, he was retaliated against. Clearly, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Isenbergh*, 97 F.3d at 444. Because the Court finds Fusaro has not provided sufficient evidence to rebut the legitimate, nondiscriminatory reason proffered by the Authority for his termination, summary judgment in favor of the Authority is appropriate with respect to Fusaro's claims for national origin and age discrimination and retaliation.[7]

### B. Plaintiffs' Claims for Denial of Procedural Due Process (Counts III, XII and XX)

■ Plaintiffs collectively argue the termination of their employment violated their constitutional rights to due process, including a notice and hearing. A procedural due process violation occurs when a state fails to provide due process. *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir.1994). Thus, only when the state "refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise." *Id.* It is undisputed the only action Plaintiffs took following their terminations was to file charges with the EEOC. Plaintiffs argue, however, the grievance procedure at the Authority is facially defective and would have been futile because the first two steps of the procedure involved filing grievances with Roca (Plaintiffs' supervisor and the Executive Director), whom Plaintiffs argue unlawfully terminated their employment in the first place.[8] Plaintiffs, however, provide no evidence other than their personal feelings that the grievance procedure would have been biased. Nevertheless, even if there were evidence of bias on the Board, the result is not necessarily a violation of due process. *Id.* at 1563. It is only when a state refuses to provide a means to correct any error resulting from such bias that a procedural due process violation would occur. *Id.* Here, Plaintiffs failed to take any action with respect to both internal Authority remedies and any other state remedies. Because the Court finds Plaintiffs "failed to avail themselves of [the grievance] procedure and presented no evidence that resort to it would have been futile," *see Maples v. Martin*, 858 F.2d 1546, 1551 (11th Cir.1988), summary judgment in favor of the Authority is appropriate with respect to Plaintiffs' procedural due process claims.

6. With respect to the particular incident involving the bidding process, Fusaro argues the Authority has failed to provide any substantive evidence that his mistakes warranted the extreme sanction of termination. Fusaro, however, misconstrues the burden of production. Because the Authority has rebutted the presumption of discrimination by providing a legitimate, nondiscriminatory reason for Fusaro's termination, it is *Fusaro*—not the Authority—who now must provide "significantly probative evidence on the issue to avoid summary judgment." *Isenbergh*, 97 F.3d at 444. As discussed herein, Fusaro has failed to meet that burden. Furthermore, simply disagreeing with an employer's decision is not sufficient evidence to prove pretext. *Tidwell*, 135 F.3d at 1427 ("A plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employ-

er's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.").

7. In Count V of the second amended complaint, Fusaro raises another retaliation claim pursuant to 42 U.S.C. § 1983 based on the exercise of his First Amendment right to free speech. His allegations are virtually identical to the other retaliation claims brought under Title VIII and the ADEA and thus the Court's analysis with respect to those claims is applicable to Fusaro's First Amendment claims.

8. The grievance procedure at the Authority consists of first filing a grievance with the employee's supervisor, then with the Executive Director and finally with the Board, whose decision is final and binding.

### C. Plaintiffs' Claims for Denial of Substantive Due Process (Counts IV, XIII and XXI)

■ Plaintiffs argue they were retaliated against for engaging in protected free speech based on a custom or policy by which the Authority retaliates against individuals who speak out against the Authority. Thus, plaintiffs argue the Authority violated their substantive due process rights in violation of 42 U.S.C. § 1983. It is well-established law that a governmental entity may not be held liable for violations of 42 U.S.C. § 1983 based on a theory of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, governmental entities may only be held liable "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Thus, a plaintiff must establish a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled' as to constitute a 'custom or usage' with the force of law.'" *Id.* at 127, 108 S.Ct. 915 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Furthermore, the authority to make municipal policy is necessarily the authority to make *final* policy and "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the [governmental entity] because their decision was final." *Id.*

■ Here, it is undisputed there is no official written policy or custom of the Authority to retaliate against employees who exercise free speech.[9] Plaintiffs argue, however, there is an "unwritten custom or policy of retaliation against employees who dare exercise free speech that is critical of perceived abuses." In support of their argument, Plaintiffs point to (1) comments made by Roca, Orlando Prendes (Roca's assistant) and Omar Barrera (the Authority's Finance Director) concerning the Letter and certain retaliatory actions they would take and (2) the termination of seven employees who

signed the Letter. Plaintiffs' argument fail on both counts.

First, the policymaker for the Authority is the Board, not Roca or any other supervisor. There is no evidence the comments allegedly made by Roca, Prendes and Barrera were authorized, adopted, endorsed or ratified by the Board. As stated earlier, a governmental entity cannot be held liable on the basis of respondeat superior and there is no basis to impute the alleged comments of Roca, Prendes and Barrera to the Board. *See Monell.*

■ With respect to the individuals terminated by the Authority, Plaintiffs still fall short of establishing a policy or custom of retaliation. Approximately 50 employees signed the Letter. Of that number, seven were terminated. In support of their argument, Plaintiffs submit the affidavits of four former employees of the Authority, Maria Vega, Felix Caceres, Violeta Lazo and Zaida Garcia. All four affidavits contain the following statements:

> "Based on my experience and observations, I witnessed many instances where the Housing Authority retaliated against those employees who dared to express concerns or disagreement with the policies and management of the Housing Authority or to voice opposition to the widespread corruption. The Housing Authority enforced an unwritten rule of retribution, either through harassment, discipline, demotion or outright termination of those persons who fell out of favor with its management due to their expressed opposition to the Authority's unlawful practices, abuses of power and due to their political affiliation."

> "I know of at least ten other employees who have either been terminated or gradually forced out of their jobs by the Authority due (at least in part) to their having signed the January 16, 1996 protest letter or otherwise expressing their opposition or disagreement with mismanagement and abuses of power at the Authority ..."

**9.** In fact, the Authority has a written policy that specifically states that no employee shall be discriminated against (or favored) based on their political beliefs or for expressing their opinion on political subjects.

Both Plaintiffs and the affiants, however, fail to provide any support for these statements aside from the conclusory allegations themselves. The termination of seven employees [10] is insufficient evidence to establish a custom or policy. In addition, there is no evidence any of the employees sought review of their terminations by the Board. Therefore, there is no evidence the Board adopted or ratified Roca's decisions. Finally, the Court notes that eleven employees who signed the Letter have since been promoted. Based on the foregoing, the Court finds Plaintiffs have failed to provide sufficient factual evidence to establish the existence of a widespread custom or policy under which the Authority retaliates against those individuals who express their views. Accordingly, summary judgment in favor of the Authority is appropriate with respect to Plaintiffs' claims under 42 U.S.C. § 1983.

### D. Hernandez's and Jimenez's Claims for Retaliation (Counts X, XI, XVII and XIX)

Hernandez and Jimenez allege their terminations were in retaliation for signing the Letter in January 1996. As stated earlier, to establish a prima facie case of retaliation, Hernandez and Jimenez must show: (1) they engaged in a protected activity (i.e. signing a letter of protest); (2) they suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Meeks*, 15 F.3d at 1021. The Authority argues Hernandez and Jimenez cannot prove either the first or third elements of their prima facie case.

Initially, the Authority argues that signing the Letter was not protected activity. A plaintiff engages in a statutorily protected activity when he or she protests an employer's conduct which is actually lawful, so long as the plaintiff demonstrates a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little*, 103 F.3d at 960. The plaintiff's bur-

den under this standard is twofold: he "must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Id.*

The Letter contained the following language concerning Fusaro:

"Since the departure of Mr. Sanchez, the Mayor has engaged in a constant and personal battle against the interim Executive Director Mr. Richard Fussaro [sic], to the point of attacking him and replacing members of the Executive Board with friends and political allies of himself and Mr. Sanchez."

"Interim Hialeah Housing Authority Executive Director, Richard Fussaro's honest and sincere attempts to restore dignity and respect among the employees has been resisted by the Mayor's and Mr. Sanchez's constant involvement and intervention of the Hialeah Housing Authority affairs."

"Mr. Richard Fussaro has been in the Hialeah Housing Authority for the past 17 years. He is a neutral party who is both capable and qualified to run the Housing Authority until such time as the fate of Mr. Sanchez is decided. However, he is under personal attack by Mayor Raul Martinez and his friends who are attempting to cover up Mr. Sanchez's abuse of power and manipulation ..."

Although the Court recognizes that informal complaints of discrimination may be protected activity in certain cases, *see Rollins v. State of Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989), the Court finds the Letter in this case does not constitute protected activity. The gravamen of establishing a protected activity is complaining of unlawful *employment* practices, i.e. discrimination. Here, the Letter makes no mention of either national origin or age discrimination with respect to Fusaro. The

---

10. With respect to the four affiants, Zaida Garcia was terminated on August 5, 1997, Felix Caceres was terminated on October 31, 1997 and Violeta Lazo was terminated on January 23, 1998. Maria Vega does not state a termination date and thus the Court assumes she left the Authority voluntarily. The Court notes the dates of termination, the earliest some 18 months after the Letter was signed, as further evidence that a custom or policy to terminate those individuals who expressed their views did not exist.

Letter does not mention Fusaro was non-Hispanic or that Maria Roca was Hispanic. Although Hernandez and Jimenez now state in their affidavits and depositions they were sending the letter to oppose the Authority's demotion of Fusaro and his replacement by Roca, "a less qualified Hispanic, based on his national origin," the Letter itself does not support these statements. Furthermore, Hernandez and Jimenez admit the letter "was primarily opposed to fiscal mismanagement and abuses of power at the Authority and secondarily concerned with Fusaro's demotion." Thus, because the Court finds the letter was not protesting any unlawful employment practice within the scope of Title VII or the ADEA, the Court finds Hernandez and Jimenez did not engage in a protected activity when signing the Letter. *See Coutu,* 47 F.3d at 1074 ("Unfair treatment, absent discrimination based on race, sex or national origin, is *not* an unlawful employment practice under Title VII."). Accordingly, Hernandez and Jimenez have failed to establish the first element of a prima facie case of retaliation. As such, the Court need not analyze the remaining elements and summary judgment in favor of the Authority is appropriate with respect to Hernandez's and Jimenez's retaliation claims.

### E. Hernandez's and Jimenez's Claims for Age Discrimination (Counts X and XVII)

 Hernandez and Jimenez also allege the authority discriminated against them on the basis of their age. The Authority admits for purposes of their argument that Hernandez and Jimenez have stated prima facie cases of age discrimination but argues they cannot rebut the Authority's legitimate, nondiscriminatory reasons for their termination-the results of the November 1996 public housing warehouse audit. As stated above, because the plaintiff bears the burden of establishing pretext, he must present "significantly probative evidence" on the issue to avoid summary judgment. *Isenbergh,* 97 F.3d at 444.

Hernandez and Jimenez fail to meet this burden. Hernandez has offered no additional evidence of age discrimination aside from the fact he was replaced by a younger person. This evidence is part of the prima facie case and cannot be used to rebut the Authority's legitimate, nondiscriminatory reason for his termination. *See Tidwell,* 135 F.3d at 1426 (plaintiff must provide a prima facie case *plus* evidence discrediting the employer's reasons to survive a motion for summary judgment). Furthermore, when questioned in his deposition as to his basis for his age discrimination claim, Hernandez replied it was "just his opinion." Jimenez also provides no additional evidence of age discrimination. Hernandez and Jimenez primarily argue the procedures for the November 1996 inventory were purposely changed to "set-up" Jimenez and Hernandez for failure to give the Authority a basis to terminate their employment. Hernandez and Jimenez fail again, however, to provide factual support for these conclusory statements.

 As stated earlier, conclusory allegations of discrimination are not sufficient to raise an inference of pretext or intentional discrimination where a defendant has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions. *Isenbergh,* 97 F.3d at 444. The evidence presented by Hernandez and Jimenez consists primarily of unsupported opinions and "unverifiable, anecdotal testimony." *See Bogle v. Orange County Board of County Com'rs,* 162 F.3d 653, 1998 WL 850244 (11th Cir. Dec.9, 1998). There is no evidence presented by either Hernandez or Jimenez that a similarly situated younger employee might have been treated differently. *Id.* The Court finds Hernandez and Jimenez have failed to provide sufficient evidence to allow a factfinder to disbelieve the Authority's proffered explanation for its actions. Based on the foregoing, summary judgment in favor of the Authority is appropriate with respect to Hernandez's and Jimenez's claims for discrimination under the ADEA.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Authority's Motion for Summary Judgment is GRANTED.