[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13725
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00352-CAR


TONY FAIRCLOTH,

Plaintiff-Appellant,

versus

HERKEL INVESTMENTS INC.,
d.b.a. Aarons Sales and Lease,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 25, 2013)

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

I.

A.

Herkel Investments, Inc. is a franchisee for Aaron's Rents and operates six stores throughout Georgia, including stores in Macon and Warner Robins. These stores sell and lease residential and office furniture, consumer electronics, and home appliances. In January 2002, Herkel hired Tony Faircloth as the Macon store Customer Account Manager, responsible for collecting past-due rent from customers and assisting the store's General Manager, Sharon Thompson.

By the summer of 2002, Faircloth and Thompson had entered into a consensual sexual relationship that lasted for a year, until the summer of 2003. Shortly thereafter, Herkel promoted Faircloth to General Manager of the Warner Robbins store and to District Manager, with supervision of the stores in Savannah, Rome, and Dalton. In 2004, Faircoth and Thompson resumed their sexual relationship; it continued until 2007. Faircloth described the relationship as "friends with benefits." Faircloth also described it as "nonconsensual," that he was sexually involved with Thompson so that she didn't cause him as many problems at work.

In early 2008, Herkel removed Faircloth from his District Manager position. Chris LaPerchia, Herkel's president, told him that it was not a demotion; rather, it was the result of the Warner Robbins's store's declining economic performance.

2

About that time, the exact month Faircloth could not recall, Faircloth told LaPerchia that he wanted to a file sexual harassment charge against Thompson. He told LaPerchia that Thompson and Herkel were discriminating against black employees on account of their race. He said that Thompson once referred to a black employee using the "N-word," and that Herkel mistreated black employees in allowing time off.

On October 20, 2008, Herkel terminated Faircloth's employment, and, at the same time, eliminated the position of General Manager at the Warner Robbins store. Thompson assumed Faircloth's duties at that store, while continuing to function as General Manager of the Macon store.

On December 10, 2008, Faircloth filed a charge with the Equal Employment Opportunity Commission (the "EEOC") in which he stated that he had been subjected to sexual harassment, discriminated against because of his sex and retaliated against because he opposed Herkel acts made unlawful under Title VII.[1] Faircloth asserted that his sexual relationship with Thompson was unwelcome, that the only way to stop her from making his life difficult at work was to continue to have sexual relations with her.

B.

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

3

Faircloth brought this action against Herkel pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1) and 3(a).  Following

discovery, Herkel moved the District Court for summary judgment.  The court

granted the motion for summary judgment, concluding that: (1) Faircloth's sexual

harassment claim was time-barred; (2) he failed to show that the reason Herkel

gave for terminating him—that it was eliminating his positions as District Manager

and General Manager of the Warner Robins store—was a pretext for sex

discrimination; and (3) he did failed to establish a *prima facie* case of retaliation.

Faircloth appeals the court's judgment.  In his brief on appeal, he does not

expressly address the District Court's conclusion that his sexual harassment claim

was time-barred.  Instead, he argues that he made out a claim for sexual

harassment because he continued an unwelcome sexual relationship with

Thompson, because she did not bother him when he did so.  He

argues that summary judgment was inappropriate on his sex discrimination and

retaliation claims because material issues of fact remain to be litigated.

## II.

We review a  summary judgment *de novo*, considering the evidence in the

light most favorable to the non-moving party.  *Brooks v. Cnty. Comm'n of

Jefferson Cnty.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Summary judgment is

appropriate if the movant shows that no genuine issue of material fact exists, and

4

that it is entitled to judgment as a matter of law.  Fed. R.Civ. P. 56(a).  A "mere scintilla" of evidence supporting the opposing party's position will not suffice. *Brooks*, 446 F.3d at 1162.  With these standards in hand, we address Faircloth's three Title VII claims.

## A.

To prosecute a Title VII claim, the plaintiff must first exhaust his administrative remedies, beginning with the filing of a charge of discrimination with the EEOC.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  In Georgia, a plaintiff must file the charge of discrimination within 180 days after the alleged unlawful employment practice occurred.  *Id.*  In determining whether a claim was timely filed, it is irrelevant that some of the acts making up the claim occurred outside the statutory time period; if at least one act contributing to the claim occurred within the filing period, all of the acts may be considered for purposes of determining liability.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002).

Assuming that Faircloth's brief challenged the District Court's determination that his sexual harassment claim was time-barred, we conclude that the determination was proper.  Faircloth filed his EEOC charge on December 10, 2008.  To avoid being time-barred, he had the burden of showing that some incident of harassment occurred on or after June 10, 2008.  *Wilkerson*, 270 F.3d at

1317.  He failed to do so; hence, the court properly granted Herkel summary judgment on his sexual harassment claim.  *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

B.

Title VII prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his sex.  42 U.S.C. § 2000e-2(a)(1).  If a Title VII plaintiff establishes a *prima facie* case of sex discrimination, and the employer articulates "some legitimate, nondiscriminatory reason" for the adverse employment action, the plaintiff may then show that the employer's proffered reason was a pretext for discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).  "[A] reason cannot . . . be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in original).

A plaintiff may establish pretext by demonstrating that the employer offered inconsistent reasons for the challenged employment action.  *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998).  However, the fact that the employer offers an additional, and not necessarily inconsistent, reason for an

employment decision does not necessarily suggest pretext if both of the employer's reasons are consistent. *Id.* We have found insufficient evidence of pretext where an employer simply offered additional reasons for its decision, without disclaiming any previous reasons it provided. *See id*. at 1424–28 (employer disclaimed a reliance on performance and asserted it terminated employee based on a reduction in workforce, but later contended that it also considered performance); *Zaben v. Air Prod. & Chem., Inc.*, 129 F.3d 1453, 1454, 1458–59 (11th Cir. 1997) (employer disclaimed reliance on seniority and asserted it terminated employee based on a reduction in workforce, but later contended it also relied on seniority when all electricians were equally qualified).

Here, the court did not err in concluding that Faircloth failed to present evidence from which a jury could conclude that Herkel's real reason for firing him was sex discrimination. First, the fact that LaPerchia stated that Herkel fired him for economic reasons and later provided the EEOC with an additional reason for terminating him[2] did not, by itself, establish pretext. While the identification of inconsistencies in an employer's testimony can be evidence of pretext, Herkel's reasons for terminating Faircloth were not necessarily inconsistent, because both

---

[2] In a letter to the EEOC, Herkel wrote that "in October 2008, following a steady decline in Mre. Faircloth's production and reports of Mr. Faircloth's mistreatment of his employees, a decision was made to eliminate Mr. Faircloth's position." The letter noted that Herkel had received complaints from employees that Faircloth was verbally abusive. Also, after his first 18 months at the Warner Robbins store, his production declined significantly, and he failed to meet stated goals and expectations.

7

the economy and his poor performance could have contributed towards his termination. *See Zaben*, 129 F.3d at 1458 (finding no pretext when employer gave different, but not necessarily inconsistent, reasons for employee's discharge).

Evidence that Faircloth may have been a good employee also did not establish pretext because whether or not he was a good employee was irrelevant to whether his position was terminated due to economic reasons. Finally, even if evidence showing that Herkel attempted to find replacements for Faircloth as General Manager of the Warner Robins store and District Manager is accepted as true, that did not show pretext because it did not necessarily suggest that the real reason for his termination was his sex. *See Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752 (holding that showing that employer's nondiscriminatory reason was false does not compel a finding of pretext).

The only evidence tending to show that sex discrimination was the real reason for his firing was that Thompson took over some of his duties as General Manager of the Warner Robins store. At best, this evidence constituted a scintilla, and was insufficient to enable a reasonable jury to find that Herkel terminated Faircloth because of his sex.

## C.

Title VII makes it unlawful for an employer to retaliate against an employee because he has opposed an unlawful employment practice. Faircloth identifies

8

three separate actions he took in opposing Herkel's employment practices as discriminatory: (1) his complaint to LaPerchia about Thompson's sexual harassment; (2) his EEOC charge; and (3) his complaint to LaPerchia about Thompson's use of the "N-word" in referring to black employees and her discrimination against them in permitting time off.  42 U.S.C. § 2000e-3(a).

Faircloth had the burden of establishing a *prima facie* case of retaliation. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  To establish a *prima facie* case, he could show "(1) that he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the [materially] adverse action."  *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (citation omitted).

The third prong, causation, is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action were not completely unrelated.  *Pennington,* 261 F.3d at 1266.  The length of time between the protected activity and the adverse action is considered in this analysis. *Maniccia v. Brown*, 171 F.3d 1364, 1369–70 (11th Cir. 1999).  A period as long as one month between a protected activity and an adverse action is not too protracted to infer causation based on temporal proximity; a three-month period between a protected activity and an adverse action, though, cannot alone establish causation.

9

*See Wideman v. Wal-Mart Stores*, 141 F.3d 1453, 1457 (11th Cir.1998) (one-month period sufficient); *Thomas v. Cooper Lighting*, 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month period insufficient).

Faircloth's complaint about Thompson's sexual harassment does not establish causation, in part because he was unable to provide the date or even the month he complained to LaPerchai about her acts of harassment.[3] As such, he failed to demonstrate that there was a less than three-month gap between his complaint and his termination and, therefore, cannot establish causation based on temporal proximity. *See Thomas*, 506 F.3d at 1364 (deeming a three to four month gap between the statutorily protected expression and the adverse employment action insufficient to infer causation based on temporal proximity). Nor could Faircloth demonstrate causation between the date of his filing of the EEOC charge and the date of his termination, for he was fired *before* he filed the EEOC charge.

In sum, summary judgment was appropriate on Faircloth's retaliation claim; a jury could not reasonably find causation based on temporal proximity.

AFFIRMED.

---

[3]   The same is true regarding his complaint to LaPerchia of Thompson's use of the "N-word" or the other allegedly discriminatory treatment of black employees.

10