Brenda LEWIS, Plaintiff,

v.

CHATTAHOOCHEE VALLEY COMMUNITY COLLEGE, and Dr. Richard J. Federinko, individually and in his official capacity as President of Chattahoochee Valley Community College, Defendants.

No. CIV. A. 00–A–1046–E.

United States District Court,
M.D. Alabama,
Eastern Division.

March 29, 2001.

Terry G. Davis, Afrika Shakir Chisholm, Davis & Hatcher, LLC, Montgomery, AL,

W. Don Eddins, W. Don Eddins, Auburn, AL, for Plaintiff.

John J. Park, Jr., Office of the Attorney General, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendants. Chattahoochee Valley Community College ("CVCC") and Dr. Richard J. Federinko (collectively "Defendants") on January 11, 2001.

The Plaintiff, Brenda Lewis ("Lewis"), originally filed her Complaint in this case on August 3, 2000. Lewis brings claims against the Defendants for discrimination on the basis of race and sex in violation of 42 U.S.C. § 2000 et seq. ("Title VII") and 42 U.S.C. § 1983 (Count I) and termination on the basis of race in violation of the Equal Protection Clause of the United States Constitution (Count II).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law Fed.R.Civ.P. 56(c).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Lewis is an African–American woman who was employed as a criminal justice professor at CVCC beginning in 1997.

She taught at CVCC for three consecutive terms of nine months. Had she taught for an additional term, she would have received tenure. She also had summer employment with CVCC during her employment there. Near the end of her third term as a criminal justice professor, she was informed that her contract would not be renewed.

Lewis states she was told that her contract was not being renewed for administrative reasons, and then was told, through a statement in the Defendants' Answer to her Complaint, that the reason for her non-renewal was that the Criminal Justice Program did not have enough graduates per year to be classified as a viable program by the Alabama Commission on Higher Education. Lewis states that the Defendants then offered as a reason that the Criminal Justice Program was losing money. Lewis contends that these reasons are pretextual, and that she was actually terminated for discriminatory reasons.

## IV. *DISCUSSION*

■ Where, as here, a plaintiff seeks to prove intentional discrimination in violation of Title VII and the Equal Protection Clause of the United States Constitution by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir. 1982)(42 U.S.C. § 1983 claim). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed

upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Lewis states in her deposition, and states through her attorney in her supplemental brief, that she was discriminated against because she is an African American female. Discrimination cases can be brought by African American females as a class. *See Jefferies v. Harris County Community Action Assoc.*, 615 F.2d 1025, 1033 (5th Cir.1980).[1] It is not entirely clear, however, that this was the claim Lewis intended to assert, since she also states, through her attorney, that she was treated less favorably than "other similarly situated employees who are not members of her class (African American)." Plaintiff's Brief in Opposition to Summary Judgment, page 14.

■ The Defendants point out that the persons who were ultimately hired on a part-time basis to teach the classes Lewis

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

formerly taught were a white male and an African–American female. Lewis does not point to these persons as comparators, however. The comparators to whom Lewis points are white females who taught in the Nursing Program. *See id.* at pages 10, 13–14. The court must conclude, therefore, that Lewis has not established a prima facie case on the basis of her status as an African–American female. Therefore, the court will analyze Lewis' claims as separate claims for discrimination based on race and based on gender.

The next dispute between the parties concerns the nature of the employment action taken against Lewis. The Defendants argue that this is a failure to promote case. According to the Defendants, Lewis cannot demonstrate that she was replaced by persons outside her class, because Lewis' full-time position was never filled. Instead, as stated above, the Defendants hired a white male and an African–American female, on a part-time basis, to teach in the Criminal Justice Program.

Lewis, on the other hand, states this case is analogous to a termination case. Lewis contends that she must show that the employer treated similarly situated employees who are not members of her class more favorably. She attempts to use as comparators two white persons who were hired into the Nursing department. Lewis contends that the prima facie case elements of her claim are that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified for the job, and (4) her employer treated similarly situated employees who are not members of the class more favorably.

The Eleventh Circuit has cautioned that the prima facie case requirement of a dis-

crimination case should not be rigid or inflexible. *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir.1999). In fact, the broad formulation of the prima facie case pointed to by Lewis in this case has been applied by the Eleventh Circuit. *See Crapp v. City of Miami Beach,* 242 F.3d 1017, 1020 (11th Cir.2001). The court will, therefore, apply this prima facie case formulation in this case. There is no dispute as to three of the elements, that is, that Lewis is an African American who was qualified for her job and who suffered an adverse employment action.

As to the fourth element, the theory advanced by Lewis is that two white women nursing instructors were treated more favorably than she was.[2] Because she has pointed to two women as comparators, to the extent that she asserts that she was discriminated against because of her gender, irrespective of her race, she has failed to establish a prima facie case. She apparently concedes as much, stating that she was treated less favorably than "other similarly situated employees who are not members of her class (African American)." Plaintiff's Brief in Opposition to Summary Judgment, page 14. Accordingly, summary judgment is due to be GRANTED as to Lewis' gender discrimination claims.

■ As to Lewis' race-based claims, the Defendants contend that Lewis has failed to create a question of fact as to whether the white comparators were similarly-situated to Lewis. The Defendants state that the Nursing Program fills a local need that the Criminal Justice Program does not because a degree is required for a license in nursing, while no degree is required for employment in local police departments. *See* Federinko's Affidavit. The Defen-

2. Lewis also states that jobs of white, non-tenured instructors were protected in the Physical Education and Administration programs, but points to no particular employees in those areas. Accordingly, Lewis has failed to establish a prima facie case based on any comparators in those programs.

dants also state that nursing requires a specified student/full-time faculty ratio, while criminal justice does not. *Id.*

In response, Lewis contends that there is no special category for nursing as opposed to other programs at the college, and that Federinko has classified nursing as a special program to disguise the fact that he discriminated against Lewis on the basis of her race. Lewis states that nursing instructors are placed on the same salary scale, Schedule D, as criminal justice instructors. Lewis also states that the requirements for tenure are the same for both programs.

The evidence regarding the differences between the Nursing Program and the Criminal Justice Program provided by the Defendants is almost entirely subjective evidence in the form of Federinko's evaluation of the relative worth of the two programs. Requiring Lewis to disprove Federinko's evaluation is too great a burden to place on Lewis at the prima facie case stage of the case. The court draws support for this reasoning from the Eleventh Circuit's opinion in *MacPherson v. University of Montevallo*, 922 F.2d 766 (11th Cir.1991).

In *MacPherson*, the plaintiffs complained that they were paid less than similarly-situated employees of the University of Montevallo who were younger than the plaintiffs. In reviewing the trial court's granting of a judgment notwithstanding the verdict, or in the alternative, motion for a new trial, the Eleventh Circuit concluded that the plaintiffs had established a prima facie case of age discrimination by comparing their salaries to other College of Business faculty members. *Id.* at 774. The plaintiffs were an associate professor of business law/accounting and an associate professor of marketing. *Id.* The plaintiffs' comparators were assistant professors of management and accounting. The court ultimately rejected the comparator

evidence provided by the plaintiffs because it crossed rank and field/discipline, but the court held that the plaintiffs had established a prima facie case. *Id.* Accordingly, taking guidance from *MacPherson*, this court concludes that Lewis has established a prima facie case of race discrimination.

In moving for summary judgment, the Defendants have articulated the legitimate, nondiscriminatory reason for not renewing Lewis' contract that the Criminal Justice department was losing money and that by hiring part-time instructors rather than having a full-time instructor, the department would spend less than it earned.

Rather than accept that this is the Defendants' articulated reason for the employment decision, Lewis states that the Defendants have offered three reasons for her non-renewal and that these reasons are inconsistent.

The first reason identified by Lewis is what Lewis has identified as an "administrative reasons" reason. According to Lewis, the Defendants advised her by letter that her employment was not going to continue with CVCC because of administrative reasons. The Defendants point out, however, that the letter actually said that "[i]t is important to understand that this is an administrative action and should not be construed by a prospective future employer as a disciplinary or punitive action." *See* Plaintiff's Attachment E.

The statement in this letter is not an articulated reason for non-renewal, but is instead the negation of the idea that the reason for non-renewal was disciplinary. Accordingly, the court does not find that this statement is an articulated reason, nor does the court find that the fact that this particular statement was made in the letter means that a specific reason for non-renewal given at a later time conflicted with this general statement.

Lewis next points to a statement made by the Defendants, in the Answer to the Complaint, that Lewis was not successful in recruiting an adequate number of students to justify a full-time instructor because, "as a result of inadequate recruitment, the criminal justice program lost money and did not consistently have enough graduates per year to be classified as a viable program by the Alabama Commission on Higher Education." Answer at ¶ 13. Lewis says that the statement that the program did not have enough graduates per year to be classified as viable was not true, and that when the Defendants realized that the reason was untrue, they modified their reason for termination of the Plaintiffs' employment and stated that the reason the contract was not renewed was because the Criminal Justice Program was not generating enough revenue.

The circumstances under which the program viability reason for non-renewal was articulated in this case are quite involved. The chain of events concerning this purported articulated reason begin with Lewis' allegations in the Complaint. Lewis alleged that she received good evaluations and performed her job satisfactorily while employed with CVCC. Complaint at ¶ 13. In the Answer, the Defendants admitted this allegation, but stated that they admitted the allegations in paragraph thirteen with the exception that Lewis was not successful in recruiting an adequate number of students majoring in criminal justice to justify retaining a full time instructor for the Criminal Justice Program and that the program did not have enough students to be considered viable by the Alabama Commission on Higher Education. Reading the Answer on its face, the statements in ¶ 13 of the Answer were not offered as a legitimate, nondiscriminatory reason for any employment action.

When conducting the deposition of Federinko, counsel for Lewis asked Federinko if it was in fact the case that the program had enough graduates to be classified as a viable program. Federinko Deposition, page 107. Federinko agreed that the program in fact met the standard for a viable program. *Id.* at page 115. Federinko consistently stated throughout his testimony, however, that "the focal point of this, again, is the cost. If you don't have the students in the classroom, you don't generate the revenue necessary to overcome the expenditures." *Id.* at 107. When counsel for Lewis stated that the number of graduates was given by the Defendants as a reason for non-renewal, Federinko answered, "right." *Id.* at 109. Federinko then went on to say that he based his "decision on cost. It has nothing to do with the number of students that are graduating." *Id.* at page 111.

Taking all of this testimony together, Federinko stated that the Defendants gave the number of graduating students as a reason and denied that he considered the number of students who are graduating, apart from cost. Furthermore, as Federinko admitted, to the extent that the number of students graduating as an indicator of program viability was relied upon, the factual basis of that reason was in error. Lewis, therefore, asserts that because this reason was false, it also undermines the reason of program cost, because the Defendants only relied on program cost as a reason once program viability based on the number of graduates was disproven.

■ The general rule in analyzing discrimination claims based on circumstantial evidence is that when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the proffered reasons is unworthy of credence in order to establish pretext. *Combs,* 106 F.3d at 1538. This case, however, presents a slightly different issue, in that Lewis contends that

the Defendants have articulated inconsistent reasons at different chronological points.

The Eleventh Circuit has addressed a situation in which an employer offered "shifting explanations" for its actions. *Bechtel Construction Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir.1995). In *Bechtel*, in a proceeding before an administrative law judge, the decisionmaker stated that an employee's job performance and medical condition were not at issue, and that the employee was dismissed because of his attitude. *Id.* On appeal, however, the employer stated that the dismissal was due to poor job performance which was exacerbated by an arthritic condition. *Id.* The court stated that the pretextual nature of the termination was "further demonstrated by [the employer's] shifting explanations for its actions." *Id.*

The Eleventh Circuit has subsequently clarified that it is the inconsistency of reasons articulated by the employer which can establish pretext. *See Tidwell v. Carter Products*, 135 F.3d 1422 (11th Cir.1998). In *Tidwell*, the employee was initially told that he had done a great job, but that his position was being terminated because there was going to be a realignment of territory. *Id.* at 1427. In a memo later written about the positions which would be affected by the territory realignments, the employer noted that there was a "performance issue" with the plaintiff. *Id.* The court held that at most a jury could conclude that performance was an additional, but undisclosed reason for the decision and that the existence of this additional reason did not establish pretext. *Id.*

Another judge in this district has interpreted the *Bechtel* decision by the Eleventh Circuit to mean that when an employer offers conflicting reasons for an employment action, such inconsistent reasons can establish pretext. *Stallworth v. E–Z Serve Convenience Stores*, 2001 WL 125304, No. 99–D–1503–N (M.D.Ala. Feb. 12, 2001)(De Ment, J.). In *Stallworth*, the court reasoned that because on two occasions the defendant said that a particular reason was the sole reason for termination, but then on a subsequent occasion gave an additional reason, even if the second reason could be viewed as complementing the first, because the defendant had previously insisted that there was only one reason, a jury could conclude that the reasons are inconsistent and, therefore, incredible. *Stallworth*, 2001 WL 125304 at *4.

■ The facts presented are dissimilar from the facts in *Bechtel* and *Stallworth*. First, a reasonable jury could not conclude that the articulated reason of cost was inconsistent with any previous reason given, because the Defendants never disclaimed, as the defendant did in *Bechtel*, the reason ultimately relied on, nor did the Defendants, as did the defendant in *Stallworth*, ever state that program viability was the sole reason for the employment action. Instead, the Defendants answered the Complaint, providing a qualification to the admission that Lewis performed her job well. Then, in the deposition, while acknowledging that program viability based on the number of graduates was given as a reason for non-renewal in the Answer, Frederinko consistently maintained that the reason for the decision was cost. In fact, as reflected in the quotations above, both the Answer and Federinko in his deposition tied viability to the cost reason. Accordingly, because the program viability reason was not articulated as a sole reason for non-renewal at a point in time remote from the cost reason, nor is viability of the program inconsistent with the cost reason, the court concludes that this case does not present a case of "shifting" or inconsistent reasons by the employer. Therefore, to establish pretext

under the general rule expressed in *Combs*, Lewis must create a question of fact as to whether each articulated reason is unworthy of credence.

 The court will, therefore, turn to the question of whether Lewis has created a question of fact as to the credibility of the articulated reason of cost to the Criminal Justice Program of a full-time instructor. In analyzing the issue, this court must evaluate whether Lewis has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538.

In the interrogatory response to the reason for the non-renewal of Lewis' contract, the Defendants stated

> Plaintiff Brenda Lewis's contract was not renewed in March 2000 because the Criminal Justice Program would not support a full-time instructor. During each year that Lewis was employed as a Criminal Justice instructor, the program's costs exceeded its revenue. By replacing Lewis with part-time criminal justice instructors, the program eliminated financial losses that were incurred during the term of her employment.

Defendants' Attachment C.

Lewis argues that the contention that her contract was not renewed for fiscal reasons is pretextual because the year that her contract was not renewed the Criminal Justice Program produced more revenues than expenditures. Lewis contends that even under the financial analysis of Brenda Kelley ("Kelley"), CVCC's Director of Business Services, the Criminal Justice Program was profitable during 1999–2000, Lewis' final year at CVCC. Kelley performed two calculations, one of which was the actual revenue and expenditures of the program in 1999–2000, and the second of

which was an extrapolation of what would have occurred had Lewis worked twelve months, rather than nine months in 1999–2000. The calculation based on the nine months included the nine months during the academic year that Lewis was on contract, and the three summer months that there was a part-time employee on contract. Under that calculation, the Criminal Justice department produced more revenue than expenditures.

Lewis contends that if cost were really the consideration, she could have had her contract renewed for nine months, and a part-time instructor could have been hired for the summer, resulting in a positive cash flow. Lewis states that renewing her contract and hiring part-time instructors for the summer would have been the most efficient option. According to Lewis, there was no reason that the Defendants could not have renewed her contract, given her tenure, and then hired part-time instructors for the summer courses.

The Defendants respond that the Criminal Justice Program was profitable during Lewis' final year only because she was replaced with a part-time instructor. The Defendants state that Lewis' proposal that she be tenured only for nine-month terms was never made to them before the depositions taken in this case. The Defendants also state that Lewis' proposal goes against the rules of the State Board of Education which give priority in teaching summer courses to full-time faculty. Lewis does not dispute this. The Defendants contend that they have no obligation to create such a position for Lewis. The Defendants also state that CVCC would spend considerably less money replacing Lewis with part-time instructors for the entire year, not just the summer.

There is no evidence before the court that Lewis had ever indicated to the Defendants that she was interested in being

renewed for a position which was anything less than a position to which she would have been entitled under the rules of the State and of CVCC. To the contrary, there is evidence that Lewis had accepted summer employment in the past. Lewis Deposition, page 42. The evidence indicates that the Criminal Justice Program could not be profitable if a full-time instructor was employed for twelve months, and that the Criminal Justice Program would save the most money by having part-time instructors throughout the year. The mere fact that Lewis contends that CVCC could have given Lewis tenure, while at the same time denying her the right to teach courses in the summer, in contravention of applicable policies, does not establish pretext, since there is no evidence that non-African-American employees were given tenure in this manner, or that CVCC was even aware that Lewis would be willing to accept a position wherein she was not entitled to teach courses in the summer, as she had in the past. The court must conclude, therefore, that, viewing all evidence in a light most favorable to the non-movant, the mere fact that part-time instructors for the summer months decreased the expenditures of the Criminal Justice Program does not mean that the Defendants' articulated reason is unworthy of credence.

Lewis also argues that the CVCC financial accountability analysis is flawed because it divides the state allocation of funds among various academic programs, whereas the state gives CVCC a lump-sum appropriation. Lewis also argues that the losses suffered by the Criminal Justice Program, as calculated by Kelley, were not substantial when considered in light of the overall budge of the school.

While these points might be valid in the context of determining sound policy for the school, provided that the proffered reason is one that might motivate a reasonable employer, an employee cannot succeed on summary judgment by simply quarreling with the wisdom of that reason. *Chapman v. Al Transport,* 229 F.3d 1012, 1030 (11th Cir.2000)(*en banc*). Furthermore, it is not the responsibility, or right, of the court to decide what a wise business decision by the employer would have been. *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1341 (11th Cir. 2000)("[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated."); *Combs,* 106 F.3d at 1541–43. Moreover, Lewis provides no evidence to establish that, whatever the merits of the accounting principles applied, that they were not actually relied on by the Defendants.

In addition to attempting to undermine the credibility of the Defendants' articulated reason of cost, Lewis also apparently attempts to provide some evidence of discriminatory intent on the part of Federinko. Lewis does not offer evidence of any comments of a racial nature made by Federinko. Lewis instead states that members of the community were concerned about bias on the part of Federinko. She specifically relies on the Affidavit of Alphonso Johnson ("Johnson"), President of the NAACP of Russell County, Alabama. Johnson lists various actions by Federinko which he views as being discriminatory. The court cannot accept a lay, conclusory opinion that actions were motivated by race, however. *Mays v. Union Camp Corp.,* 114 F.Supp.2d 1233, 1244 (M.D.Ala. 2000). The court will, therefore, look at the underlying specific facts pointed to by Johnson as a basis for his opinions to determine if there is evidence of racial animus.

Johnson states that Steve O'Steen, a deputy with the Russell County Sheriff's Department, and a coach at CVCC, asked African-American leaders not to support

Lewis. Affidavit of Johnson. The court neither finds evidence of racial animus in that statement by Steve O'Steen, nor finds a basis for attributing any supposed bias to Federinko. Johnson also states that Federinko does not place enough African Americans in positions of authority. *Id.* There is no factual basis for this opinion: therefore, it is insufficient as evidence of racial animus. Johnson also complains that Federinko cut the basketball team, which was predominantly African American, but kept baseball, which is predominantly white. *Id.*

■ The Defendants have provided evidence that along with the men's and women's basketball teams, the men's and women's tennis teams and the men's and women's cross-country teams, which were predominantly white, were also temporarily discontinued. Federinko states that baseball was not discontinued because there was a tenured coach, and softball, the woman's program, was not discontinued in order to keep a balance of scholarships in accordance with Title IX. Federinko Deposition, page 47. This court cannot conclude, therefore, that Johnson's affidavit provides any evidence of racial animus on the part of Federinko.

Lewis also appears to rely on comparative evidence to establish bias on the part of Federinko. Lewis contends that Federinko's explanation as to the renewal of the white nursing instructors' contracts based on the fact that the Nursing Program, unlike the Criminal Justice Program, was an essential program was pretextual. Lewis argues that Federinko's opinion is entitled to no weight and is based on a subjective evaluation which subjects the Defendants to close scrutiny.

The Eleventh Circuit has explained that a subjective reason can be a sufficient reason for an employment action if there is a clear and reasonably specific factual basis upon which the subjective opinion is based. *Chapman,* 229 F.3d at 1034. Although the issue relative to the Nursing Program is one of comparison, rather than the articulation of a legitimate, non-discriminatory reason, the court finds the Eleventh Circuit's analysis in *Chapman* to be appropriately applied to this issue.

Federinko has stated in an Affidavit that criminal justice is not a critical program for the community and is not a core subject. Federinko Affidavit, page 2. He additionally states that the local community typically does not require a degree in criminal justice as a condition for employment. *Id.* Federinko states, therefore, that the Criminal Justice Program has to make money, or it is an unnecessary luxury. *Id.* By contrast, Federinko says that the Nursing Program is a critical program. He states that local hospitals and health care providers need nurses and to practice nursing, a person must have a degree. *Id.* at page 3. He further states that an accredited program in nursing has a mandated student/full-time faculty ratio that the Criminal Justice Program does not have. *Id.* The court finds that this explanation is sufficiently based on specific facts under *Chapman.*

■ Lewis argues, however, that this explanation is itself pretextual. She states in her brief that most police departments now require college credit or college degrees, but provides no evidence to support this assertion. Steve O'Steen, with the Russell County Sheriff's Department, testified that in his department, a degree would not affect his job one way or the other. O'Steen Deposition, page 21. Lewis merely states in brief that criminal justice is important, without citing to any supporting evidence. Although Lewis points to evidence for the proposition that ten part-time employees were used to teach nursing classes, this evidence does not undermine Federinko's statement that

there are required ratios that must be maintained in Nursing for accreditation which are not present in Criminal Justice. The court finds, therefore, that while Federinko's assessment that the Nursing Program was essential, whereas the Criminal Justice Program was not, is an assessment with which perhaps not everyone would agree, this is precisely the type of assessment that someone in the role of college president has to make, and Lewis has not demonstrated that Federinko did not honestly act on that assessment, or that his assessment is unworthy of credence.

Finally, Lewis argues that the Defendants' reliance on compliance with a consent order as evidence that Federinko has acted without discriminatory intent is misplaced. In analyzing the Defendants' Motion for Summary Judgment, the court has not taken into consideration the Defendants' contention that all of Federinko's actions should be viewed against a backdrop of judicial oversight pursuant to a consent decree entered in *Shuford, et al. v. Alabama State Bd. of Educ.*, 846 F.Supp. 1511 (M.D.Ala.1994). The court will, however, examine the evidence provided to the extent that Lewis contends it is actually indicative of discrimination, rather than non-discrimination.

■ According to the Defendants, CVCC and Federinko have acted within the requirements of *Shuford.* Lewis contends, however, that there is a high attrition of African American female employees. Lewis also contends that Federinko has violated the consent decree entered in *Shuford* by hiring a disproportionately low number of African American female employees in part-time positions. The only portion of the consent decree to which Lewis points as having been violated, however, states that a college shall not engage in the "excessive use of part-time employees, and the totality of the circumstances will be considered in relating to the college's action" in an attempt to undermine the purposes of the decree. Plaintiff's Response to Defendants' Reply, page 6; Attachment S, page 22. Lewis does not explain how, and the court perceives no basis for concluding that, a contention that there is an attrition of African American females or that African American females are not equally hired into part-time positions is probative of a question of whether a consent decree provision prohibiting the excessive use of a part-time positions has been violated. Furthermore, without a valid statistical analysis, this court is unable to determine whether the numbers of part-time employees who were hired are probative of disparate treatment. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir.1997) ("[s]tatistics without an analytic foundation are 'virtually meaningless.'") (citation omitted).[3] Accordingly, the court does not conclude that any evidence of supposed compliance or non-compliance with the Shuford consent decree is probative of racial bias in this case.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Plaintiff, Brenda Lewis, has failed to create a question of fact as to whether the Defendants' articulated rea-

---

**3.** The Defendants have also offered some statistical evidence to demonstrate that Federinko has not been treating African–American employees disparately. Lewis contends that the numbers are misleading, because the Defendants have not included all of the African–American females who have left employment. Even accepting Lewis' figures, the court cannot conclude that a list of fifteen white employees and nine African–Americans who have been replaced or non-renewed is probative either of discrimination, or non-discrimination, without a basis for evaluating whether the numbers are statistically significant. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir.1997).

son of the cost to the Criminal Justice Program at CVCC of employing a full-time instructor is pretextual. Accordingly, the Motion for Summary Judgment is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED that the Motion for Summary Judgment (Doc. # 11), filed by Defendants Chattahoochee Valley Community College and Dr. Richard J. Federinko is GRANTED and JUDGMENT is entered in favor of Chattahoochee Valley Community College and Dr. Richard J. Federinko and against the Plaintiff, Brenda Lewis.

Costs are taxed against the Plaintiff.