Debra LOONEY, Plaintiff,

v.

HYUNDAI MOTOR MANUFAC-
TURING ALABAMA, LLC,
Defendant.

No. CIV.A. 2:04CV121–A.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 25, 2005.

Gregory O'Dell Wiggins, Wiggins Childs
Quinn & Pantanzis, PC, Kevin Wade Jent,
Wiggins Childs Quinn & Pantanzis, PC,
Birmingham, AL, for Debra Looney, Plain-
tiff.

Brian R. Bostick, Joseph Trent Scofield,
Ogletree, Deakins, Nash, Smoak & Stew-
art, Birmingham, AL, Thomas A. Tread-
well, Hyundai Motor Manufacturing Ala-
bama LLC, Montgomery, AL, for Hyundai
Motor Manufacturing Alabama, LLC, De-
fendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Senior District Judge.

### I. INTRODUCTION

This cause is before the court on a Mo-
tion for Summary Judgment (Doc. # 18)
filed by the Defendant, Hyundai Motor
Manufacturing Alabama, LLC ("Hyundai")
on August 5, 2004. The Plaintiff, Debra
Looney, filed her complaint on February
12, 2004 (Doc. # 1), bringing claims pursu-
ant to 42 U.S.C. § 2000, et seq. ("Title
VII"), 42 U.S.C. § 1981, and 29 U.S.C.
§ 621, et seq. ("Age Discrimination Em-
ployment Act" or "ADEA"). Defendant
denies Plaintiff was discriminated against
on the basis of race or age and is entitled
to summary judgment because Looney
cannot challenge Hyundai's legitimate,
non-discriminatory reasons for rejecting
her application for employment. The
court held oral argument on the motions
on February 11, 2005. This court has
jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file,' together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. AI Transport,* 229 F.3d 1012, 1026 (11th Cir.2000) *(en banc ).*

## III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Debra Looney, who is African–American and over the age of forty, applied over the internet for a Benefits Administrator position with Hyundai at its Montgomery, Alabama location. Looney received a response to her inquiry from recruiter Jan Weiss of WISE Staffing Solutions. During her first conversation with Weiss, Looney learned that she might be interviewing with Bob Hargrove, an African–American Assistant Manager at Hyundai. If hired, Looney would report to Hargrove.

Looney first interviewed with Hyundai on January 21, 2003. During this interview, Looney met with Hargrove, I.B. Jang, C.D. Kim, and Greg Kimble. Kimble, who is African–American, was the Director of Human Resources and General Affairs and Hargrove's supervisor. During this interview Looney was asked about her nationality, to which she responded "African–American." After this interview,

on January 23, 2003, Weiss informed Looney that Hyundai had liked her and that Weiss needed to perform a background check and see her references. According to an email from Weiss to Looney, Weiss spoke with Kimble on February 3, 2003, who told her that he was to get in touch with Hargrove to finalize everything. Looney followed up the interview with a letter to Hyundai and a phone call to Hargrove on February 4, 2003. The next day, Looney spoke with Weiss who told Looney that Hyundai was going to hire her. Sometime prior to February 6, 2003, Weiss communicated to Hyundai that Looney requested a starting salary of $43,500.

On March 12, 2003, Hargrove told Looney that Hyundai management wanted him to hire a white female or male in human resources, so Hargrove decided to hire a white human resources assistant. This assistant had to be hired before Looney could complete the hiring process. According to Hargrove, at the beginning of his tenure with Hyundai, Kimble informed him that Hargrove needed to hire a white employee because he was black and Wendy Warner, Hyundai's Human Resources Manager for Employment, needed to hire a black employee because she was white. Kimble reinforced this directive in follow-up discussions with Hargrove. In one such discussion, Kimble reminded Hargrove that they needed to keep in mind that they "were going to hire a white or a black depending on who was leading that department."

Looney was informed that she would be required to meet with B.M. Ahn, an executive vice president involved with human resources and administration, but at the same time, was assured that she was Hyundai's number one candidate for this position. Throughout the hiring process, Looney was continually informed that she was the number one candidate and that she had the position. Eventually, a meeting was scheduled between Looney and Ahn for April 2, 2003. Looney spoke with Kimble briefly while she waited for Ahn with Hargrove. Kimble told Looney that they had approved her a long time ago, giving her the impression that it was not necessary for her to meet with Kimble again. Looney learned that Ahn would not be available to meet with her that day. Hargrove, however, told Looney that Kimble had given the approval to hire her. Then, Hargrove gave Looney a tour of the plant and again reiterated that Kimble had given him the authority to hire her. After the April 2, 2003 tour, Looney and her recruiter were told that Hyundai wanted the Plaintiff to begin work the next week.

On April 7, 2003, Looney's recruiter sent an email to Warner requesting an update since they had been assured that an offer was forthcoming. Warner replied that Hargrove had verbally expressed his interest in this candidate but she had not received a written request and could not move forward with the offer. Two days later, Looney sent an email to Weiss detailing a conversation that she had with Hargrove in which she told him that she was beginning to move some of her belongings to Montgomery and he told her that he was working to get the paperwork completed before he left for Korea. Looney sent a few more emails to Hargrove about the position and at some point was told that she would have to come back for another interview with Ahn.

Looney was scheduled to come to Montgomery on May 12, 2003 to meet with Ahn. Hargrove took her to a conference room where they were joined by Kimble. Looney was told to stand up when Ahn entered the room. Kimble went out to retrieve Ahn, introduced him to Looney, and told Ahn the position that Looney was seeking. Looney told Ahn that she was very glad to meet him and that now she

could tell her grandmother that she had finally met him. Ahn nodded his head in response. The entire meeting lasted less than five minutes.

Hargrove testified that a day or two days after what he characterized as the "two-minute" meeting with Ahn on May 12, 2003, Kimble told him that Hyundai was not going forward with Looney's hiring. Kimble never mentioned a voice mail he had received from Looney during this conversation. When Hargrove asked for an explanation, Kimble threw up his hands. Hargrove told Kimble that he had already told Looney that she had the job. Hargrove reminded Kimble that he did this because immediately after the "two-minute" meeting, he had asked Kimble if they could go forward in the process with Looney and Kimble gave Hargrove the thumbs up sign. Kimble disputed Hargrove's recollection and stated that after the May 12, 2003 meeting, Ahn told him that he wanted them to consider other candidates, a message he then relayed to Hargrove. Kimble believed that Hargrove was pushing for Looney to be hired more than anyone else.

Looney's recruiter contacted Warner about the position. Weiss and Warner became involved in an altercation over the phone and Warner stated that "your client is not going to be hired anyway." Weiss relayed to Looney what Warner had said about her hiring. After Looney received this information she called and left an "upset" voice mail message on Kimble's phone that Looney characterized as a "passionate plea." Weiss then told Looney that she had talked with Kimble and a final decision had not been made.

Eventually, Hyundai hired Melanie McCormick, a Caucasian female who was then approximately thirty-one years old, for the Benefits Specialist position. Hyundai was interviewing for two Benefits Specialist positions in the Spring of 2003, but

to date Hyundai has only filled one position on a permanent basis, with McCormick.

Looney filed her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on October 6, 2003. Hyundai responded to the charge with a letter to the EEOC that stated that McCormick was selected for the Benefits Specialist position because management determined that she "possessed the requisite work experience, computer skills, and education to fill the Benefits Specialist position." Hyundai told the EEOC that "Ms. McCormick's personality, attitude, and demeanor were better suited for the position than those of any other candidate." Hyundai also told the EEOC that Looney and Weiss made frequent inquiries about the position that were often rude and demanding and became increasingly aggressive. Additionally, McCormick's salary requirements were lower than Looney's, as was McCormick's recruiter's commission.

Hyundai adopted its response to Looney's EEOC Charge through answers to interrogatories signed by Kimble, who testified that he made the ultimate decision not to hire Looney. Later, however, Kimble stated that the voice mail message Looney left for him was the only reason Looney was not hired.

## IV. *DISCUSSION*

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race or age by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case

of discrimination, the burden of production is placed upon the employer to articulate a legitimate non-discriminatory reason for its employment action. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

A. *Prima facie case of discrimination*

■ Under *McDonnell Douglas,* a plaintiff may establish a prima facie case of discrimination in hiring by establishing that (1) he belongs to a protected class; (2) he was qualified for and applied for a position the employer was trying to fill; (3) he was denied the position; and (4) others who were not members of the protected class were hired. *See Cooper v. Southern Co.,* 390 F.3d 695, 724 n. 16 (11th Cir.2004) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); *see Reeves,* 530 U.S. at 141–42, 120 S.Ct. 2097 (recognizing widespread application of the *McDonnell Douglas* framework to ADEA claims).

In the instant case, Hyundai concedes that Looney can establish a prima facie case of both race and age discrimination. Specifically, Plaintiff can prove that she is a member of a protected class (African-American, and over forty), and for the purposes of this motion, Defendant presumes she could show that she was minimally qualified for the position. Defendant concedes that Plaintiff can also prove she was subject to an adverse employment action in that she was not hired, and that the person who was hired for her position was outside the protected class (or, for purposes of her ADEA claim, was substantially younger).

B. *Legitimate, non-discriminatory justification*

■ Once a plaintiff puts forth a prima facie case, which establishes a presumption of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for her non-selection. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089). "It is important to bear in mind ... that the defendant's burden of rebuttal is exceedingly light .... At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper,* 390 F.3d at 725 (citing *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)).

The court finds that Hyundai has met its burden of production. Defendant submits evidence of Plaintiff leaving an aggressive and irate phone message on the voice mail of one of Hyundai's primary decisionmakers, Kimble. Def. Exh. 4. Defendant has also taken the position that: Looney's recruiter charged a higher fee, Def. Exh. B:

Kimble Dep., p. 132:4–13, Weiss was rude and aggressive, Def. Exh. A: Looney Dep., pp. 236:2–237:17; Def. Exh. C: Hargrove Dep., pp. 163:12–164:1, 165:5–22; Def. Exh. B: Kimble Dep., pp. 44:8–46:2, 82:15–83:7; Def. Exh. F: Warner Dep., pp. 45:7–46:5, and McCormick's qualifications were superior to Looney's qualifications. *See* Def. Exh. B: Kimble Dep., pp. 131:9–132:3 (discussing McCormick's college degree, her several years of experience working in benefits and all other areas of human resources, and her "very personable and bubbly" attitude during the interview process.).

The court finds that the Defendant has met the "exceedingly light" burden of production. *See Cooper*, 390 F.3d at 725 (citations and quotations omitted). The evidence of Looney's aggressive and irate behavior alone would satisfy Defendant's burden to articulate a legitimate, non-discriminatory rationale for its action. *See Chapman*, 229 F.3d at 1012 (holding that an employer may legitimately refuse to hire someone who displays questionable attitude or appearance during the interview process). The burden now shifts to Looney "to prove by a preponderance of the evidence that the defendant's reason is but a pretext for discrimination." *See Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir.1988) (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817).

### C. *Pretext*

A plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Combs*, 106 F.3d at 1528.

Looney presents three arguments in support of a finding of pretext within the *McDonnell Douglas* circumstantial evidence framework: 1) Hyundai has offered differing justifications for her non-selection at different times, but has now effectively disavowed all justifications except for the May 16, 2003 voice mail message to Kimble; 2) there is a question of fact as to whether the decision not to hire her was made before or after she left the voice mail message; and 3) Kimble's hiring directives to Hargrove show a racially discriminatory animus.

### 1. Defendant's justification(s) for non-selection

Plaintiff argues that summary judgment should not be granted since Defendant has articulated different reasons for the non-selection of Looney at different times and ultimately disavowed all but one of them. The general rule in analyzing discrimination claims based on circumstantial evidence is that when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the proffered reasons is unworthy of credence in order to establish pretext. *Id.* This case, however, presents a slightly different issue, in that Looney contends that the Defendant has essentially "dropped all of the reasons it gave to the EEOC for the non-selection of Looney" in light of Kimble's admission that the voice mail message was the only reason for her non-selection.[1] Pl. Resp. Br., p. 23.

---

1. The court notes that because Plaintiff's allegations are not so much that the Defendant has "shifted explanations" or given inconsistent explanations, but rather the Defendant has disavowed all but one of its original reasons, this Circuit's caselaw on "shifting" or "inconsistent" explanations is not applicable in this case. *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir.1995); *Tidwell v. Carter Prods.*, 135 F.3d 1422 (11th Cir.1998); *see also Lewis v. Chattahoochee Valley Cmty. Coll.*, 136 F.Supp.2d 1232, 1239–

In Defendant's response to Plaintiff's EEOC Charge, which was later adopted in Hyundai's Responses to the Plaintiff's First Set of Interrogatories and Request for Production, Defendant gives multiple reasons for Looney's non-selection. Hyundai states that McCormick, the younger white female, was selected for the position because management determined that she "possessed the requisite work experience, computer skills, and education to fill the Benefits Specialist position" and "McCormick's personality, attitude, and demeanor were better suited for the position than those of any other candidate." *See* Pl. Exh. 1(A)—Def. Resp. to EEOC Charge, p. 3. In comparing Looney and McCormick, Hyundai's EEOC response, which Kimble signed, noted that

> [u]nlike Ms. Looney, Ms. McCormick had a college degree . . . neither Ms. McCormick or her recruiter made repeated aggressive and rude inquiries regarding the status of the selection process . . . Ms. McCormick's anticipated salary requirement fell within the acceptable range for the Benefits Specialist position and below the anticipated salary requirement of Ms. Looney . . . [and] Ms. McCormick's personnel recruiter charged [Hyundai] a fee of 14% . . ., [which is] considerably less than the [20%] fee anticipated from Ms. Looney's recruiter.
>
> *Id.*

Nonetheless, Looney presents evidence that the other factors (outside of the upset voice mail message) were disavowed, or rather, not originally relied upon. In parts of his deposition, Kimble states that the voice mail message left on May 16, 2003 was the "main reason" for Looney's non-selection, Def. Exh. B: Kimble Dep., p. 94:4–10, or the "final" reason for her non-selection. *Id.* at 121:18–122:5. Nonetheless, in another part of his deposition, Kimble affirms the fact that he has reviewed the responses to the EEOC charge listing the multiple reasons, yet then proceeds in this colloquy:

> Q: . . . You testified earlier that the reason that you didn't select Ms. Looney for employment with Hyundai was because of the voice mail that she left on May 16th?
>
> A: That was my reason, yes.
>
> Q: Were there any other reasons that you had for not selecting her?
>
> A: No, just I thought it was totally unprofessional. If she did that with me she would do it with our team members, you know.
>
> *Id.* at 119:3–14.

Therefore, construing the evidence in the light most favorable to the Plaintiff, Kimble appears to disavow all the reasons for Looney's non-selection except the May 16, 2003 voice mail message. *See Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir.1990) (holding that "the task of disambiguating ambiguous utterances is for trial, not for summary judgment."). The court finds that a reasonable jury could find that the articulated reason of the May 16, 2003 voice mail message was the only reason for Looney's non-selection. Therefore, construing the evidence in the light most favorable to the Plaintiff, Looney must demonstrate that Hyundai's proffered *explanation* (singular) is unworthy of credence.[2]

41 (M.D.Ala.2001); *Stallworth v. E–Z Serve Convenience Stores*, No. 99–D–1503–N, 2001 WL 125304, at *4 (M.D.Ala. Feb.12, 2001).

**2.** At oral argument, Defense counsel conceded that for the purposes of Plaintiff's motion for summary judgment, Plaintiff is only required to demonstrate that the singular voice mail message justification is unworthy of credence.

2. Looney's May 16, 2003 voice mail message

Plaintiff argues that summary judgment should not be granted because there is a question of fact as to whether the decision not to hire her was made before or after she left a message that Looney characterizes as an upset voice mail message, or a passionate plea, for Kimble on May 16, 2003. *See* Def. Exh. A: Looney Dep., pp. 268:19–21, 274:12. Looney presents evidence that Kimble told Hargrove that "we're not going to move forward with her in the process," (Def. Exh. C: Hargrove Dep., p. 211:5–21),[3] days before Looney left the May 16, 2003 voice mail message for Kimble. Specifically, Looney had her "two-minute" meeting with Ahn on May 12, 2003. In his deposition, Hargrove states that Kimble told him that "she's not going to be hired," *id.* at 201:10–11, "if not that day, that next day. I'm almost sure it was that day after that two-minute conversation." *Id.* at 201:14–16. As a result, Looney creates a question of fact as to whether the decision to not hire Looney was made before she even left the voice mail message that Defendant uses as its proffered justification for her non-selection.

A plaintiff can withstand summary judgment by producing sufficient evidence to allow a reasonable finder of fact to conclude that Defendant's articulated reasons for its decision are not believable. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir.1994). In the instant case, as discussed previously in section IV.C.1, Plaintiff produces evidence that Defendant admittedly relied on only one reason for Looney's non-selection, her voice mail message to Kimble on May 16, 2003. With respect to the voice mail message justification, Looney's evidence allows a fact-finder to reasonably infer that Hyundai's proffered non-discriminatory reason was either a post hoc fabrication or otherwise did not actually motivate the employment action. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) (citations omitted).

The court will now turn its attention to Plaintiff's last argument, that summary judgment should not be granted on Looney's race claim because the comments made by Kimble are circumstantial evidence of racial animus.

3. Racial animus[4]

The Eleventh Circuit has held that "[l]anguage not amounting to direct evidence but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998) (citations omitted) (holding that the Eleventh Circuit has "marked severe limits for the kind of language to be treated as direct evidence of discrimination.").

Plaintiff argues that summary judgment should not be granted on Plaintiff's race claim because Kimble's comments regarding the hiring show racial animus that can serve as circumstantial evidence of pretext with respect to Looney's non-selection as a Benefits Administrator. Specifically, Looney presents evidence that Kimble directed Hargrove to hire a white person because Hargrove was black and another employee, Warner, to hire a black person because she was white. Def. Exh. C:

---

3. As to whether the phrase "not going to go forward with her" could be construed as merely temporarily halting her application process rather than terminating it, the court construes the evidence in the light most favorable to the Plaintiff. Additionally, Hargrove also stated in stronger language that he was told "that they weren't going to hire her" before she left the voice mail message. Def. Exh. C: Hargrove Dep., pp. at 200:17–201:23.

4. Plaintiff does not argue that Defendant exhibited any age animus.

Hargrove Dep., p. 184:1–10. Hargrove also recounted one or two more times when Kimble told him generally to keep in mind that Hyundai was "going to hire a white or a black person depending on who was leading that department." *Id.* at 190:5–15; *see also id.* at 187:3–23. Looney also remembers Hargrove recounting that he wanted to hire an administrative assistant before hiring someone for the Benefits Administrator position. Looney remembers Hargrove saying that "it needed to be a Caucasian individual," Def. Exh. A: Looney Dep., p. 129:12–19, and "that in order to hire me that management had told him that he had to hire someone white." *Id.* at 130:20–23. Looney states that Hargrove told her that it was Kimble who gave those directions to Hargrove. *Id.* at 131:1–3.

Defendant argues that the statements attributed to Kimble had no bearing on Looney's non-selection because they were made at the beginning of Hargrove's employment and were referring to the administrative assistant position, a job Looney was not seeking. Therefore, Defendant argues, Kimble's alleged remarks are nothing more than "stray remarks." *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) (stating that stray remarks such as "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" do not justify obligating an employer to prove that its decision was based on legitimate criteria).

The Eleventh Circuit observed: "Although we have repeatedly held that [stray] comments are not *direct* evidence of discrimination because they are either too remote in time or too attenuated because they were not directed at the plaintiff, we have not held that such comments can never constitute *circumstantial* evidence of discrimination." *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir.1998) (emphasis in original; citations omitted). "Instead, the strayness of the remarks merely goes to the strength of their probative value." *Bernstein v. Sephora, Div. of DFS Group L.P.*, 182 F.Supp.2d 1214, 1223 (S.D.Fla.2002). In *Damon v. Fleming Supermarkets of Florida, Incorporated*, the Eleventh Circuit focused on the substance, context, and timing of the remarks at issue. 196 F.3d 1354, 1362–63 (11th Cir.1999) (citing *Jones*, 151 F.3d at 1323 n. 11) (holding that "language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out a prima facie case") (citations omitted)); *Beaver v. Rayonier, Inc.*, 188 F.3d 1279, 1286 (11th Cir.1999), *withdrawn and republished as*, 200 F.3d 723, 731–32 (11th Cir.1999) (finding decision-maker's comment, made several months before the plaintiff's termination, that he wanted younger employees, taken in connection with evidence that defendant chose younger employees for six of seven positions and evidence that plaintiff was more qualified, to constitute circumstantial evidence of a discriminatory motive)).

In analyzing the substance, context, and timing of Kimble's alleged comments, this court finds them to be significant pieces of circumstantial evidence. *See id.* While the substance of the alleged instructions was not facially derogatory, the nonetheless discriminatory directives were linked contextually to the decisionmaking process. At oral argument, Defendant, citing *Standard v. A.B.E.L. Services, Incorporated*, argued that Kimble gave approval to move Looney on through the interview process, and this positive action with respect to Looney is sufficient to break the causal chain for discriminatory intent. *See* 161 F.3d 1318, 1330 (11th Cir.1998) (holding that the direct link between the statement and discriminatory intent against

Standard was "broken by the simple fact that Standard was hired, on [employer's] recommendation, after [employer] made the statement"). The court finds this argument unconvincing, in light of the undisputed fact that Kimble was the primary decisionmaker who ultimately decided that Hyundai should *not* hire Looney. In other words, there was no hiring here, as there was in *Standard*, to break the direct link between Kimble's statements and the alleged discriminatory intent against Looney.

In relation to both the context and timing of the remarks, Defendant argues that Kimble's directives were vague statements made before the Benefits Administrator hiring process began. While Kimble's alleged directions to Hargrove to hire a white administrative assistant are not direct evidence of racial animus as it relates to the hiring of the Benefits Administrator position Looney applied for, a reasonable jury could conclude that because a similar result was accomplished in the Benefits Administrator position Looney sought, a discriminatory animus was a motivating factor in the process that led to the non-selection of Looney. In other words, there

is a triable question of fact as to whether Hargrove, who is African–American, hired McCormick, who is Caucasian, as a Benefits Administrator underneath him because of racial animus.

Additionally, while some statements attributed to Kimble which directed Hargrove to hire on the basis of race were related to the administrative assistant position, Def. Exh. A: Looney Dep., pp. 129:12–19, 130:20–23, the court finds that, in taking the evidence in a light most favorable to the Plaintiff, some of Kimble's directives to hire a white person if the head of the department was a black person can be construed as more general in nature, *see* Def. Exh. B: Hargrove Dep., pp. 184:1–10,[5] 190:5–15,[6] or even specifically referring to the Benefits Administrator position Looney sought. *See id.* at 187:3–23.[7]

Taking the evidence in the light most favorable to the non-movant Looney, Kimble gave repeated specific racially discriminatory directives that were contextually linked to the decisionmaking process, so even if they did not rise to the level of direct evidence, they are still highly probative of pretext. *See Damon*, 196 F.3d at

---

5. Hargrove deposition is as follows:

   A: .... At the beginning Greg came to us, either individually or collectively, and we were given a conversation that we were to—because I was black that I needed to hire a white person and that Wendy had to hire a black person and that Audie needed to hire a black person. And that was—that was my first perception—not perception but first initiative.

6. Hargrove's deposition is as follows:

   Q: did you ever have any other discussions with [Kimble] about considerations of race, sex, age, or whatever in particular hiring decisions after that point?
   A: Yeah, we talked once or twice about that. And just to—you know, that when we hired to keep in mind that we were going to hire a white or a black depending on who was leading that department.

7. Hargrove's deposition is as follows:

   Q: So I guess there were actually two positions you were looking for that report to you?
   A: Yes, sir.
   Q: And I guess was the message that one of those two needs to be a particular characteristic?
   A: Oh, yes, sir, white.
   Q: And was he saying that the other person could be black?
   A: Uh-huh, yeah, yes, sir.
   Q: Were there any particular races or nationalities that Mr. Kimble told you you couldn't hire?
   A: No, sir. He just wanted—he just wanted us to make an effort, you know, and make sure that we had a black employee and a white employee—if I'm black, you know, his words were he wanted to make sure he showed the department, you know.

1362–63. Ultimately, Kimble's remarks are probative as to whether racial animus motivated the decision to hire McCormick over Looney because the remarks (1) can be construed as speaking to a general hiring policy, and not just a specific administrative assistant position, (2) preceded the hiring of someone who met Kimble's alleged class requirements in the instant case, that is, McCormick who is Caucasian, working under Hargrove, who is African–American, and (3) came from the same decision-maker primarily responsible for Looney's non-selection. *See id.* (citing *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 130–133 (3d Cir.1997) (holding that remarks made one year after termination, and not directly about plaintiff, could be taken by a jury as an accurate reflection of the existing managerial attitude toward older workers)).

## V. *CONCLUSION*

The ultimate question is whether there is a sufficient evidentiary basis for the jury to find that Hyundai's decision was motivated by Looney's race or age, or both. This court finds that Looney has created a triable issue of fact as to whether the Defendant disavowed all but one of its proffered justifications for non-selection, and further, whether the remaining proffered justification for non-selection, the voice-mail message, was a post hoc fabrication unworthy of credence. Additionally, a fact question exists as to whether Hyundai's reasons for termination were a pretext for racial discrimination, given the circumstantial evidence of Kimble's racially discriminatory hiring directives. Therefore, it is for a jury to determine whether, considering all the evidence, the decision not to hire Looney was based on an unlawful discriminatory motive as alleged. The

Defendant's Motion for Summary Judgment is DENIED.